UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ringdahl Architects, Inc.,
a Minnesota corporation,

Civil No. 16-1060 (DWF/LIB)

Plaintiff,

v.

**MEMORANDUM
OPINION AND ORDER**

Swendsrud Construction, Inc.,
a Minnesota corporation, and Hilltop
Lumber of Glenwood, Inc., a Minnesota
Corporation,

Defendants.

_____

Dwight G. Rabuse, Esq., and Holly J. Newman, Esq., DeWitt Mackall Counse & Moore, S.C., counsel for Plaintiff.

Brock P. Alton, Esq., and Marissa K. Linden, Esq., Gislason & Hunter LLP, and Jordan B. Weir, Esq., and Robert G. Manly, Esq., Vogel Law Firm, counsel for Defendants.

_____

**INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment brought by Defendants Swendsrud Construction, Inc. ("Swendsrud") and Hilltop Lumber of Glenwood, Inc. ("Hilltop") (together, "Defendants") (Doc. No. 30) and Plaintiff Ringdahl Architects, Inc. ("Ringdahl" or "Plaintiff") (Doc. No. 36). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendants' motion in part.

## BACKGROUND

On August 7, 2012, Ringdahl and Dr. Hamid R. Abbasi entered into a contract for the design and services related to the construction of a house and garage for Abbasi (the "Project"). (Doc. No. 1 ("Compl.") ¶ 10; Doc. No. 33 ("Alton Decl.") ¶ III, Ex. 2 (the "Ringdahl-Abbasi Contract").) Pursuant to the Ringdahl-Abbasi Contract, Ringdahl was to perform work described as "Design, Construction Documents and Construction Administration Services" pursuant to the following relevant terms:

> **Fee**  The total fee, except stated lump sum, shall be understood to be an estimate, based upon Scope of Services[1], and shall not be exceeded by more than ten percent, without written approval of the Client. Where the fee arrangement is to be on an hourly basis. [sic] The rates shall be those that prevail at the time services are rendered. . . .
> . . .
>
> **Termination of Services**  This agreement may be terminated upon 10 days written notice by either party should the other fail to perform his obligations hereunder. In the event of termination, the Client shall pay the Design Professional for all services rendered to the date of termination, all reimbursable expenses, and reasonable termination expenses.
>
> **Ownership of Documents**  All documents produced by the Design Professional under this agreement shall remain the property of the Design Professional and may not be used by the Client *for any other endeavor* without the written consent of the Design Professional.

(Ringdahl-Abbasi Contract at 1-2 (emphasis added).) The parties agreed that the budget for the project would not exceed $1,000,000. (*Id*. at Amendments.)

---

[1] The "Scope of Services" is not defined. (*Id*.)

The Project consisted of two phases: Phase I (construction of a three story garage with living quarters) and Phase II (construction of the main living quarters). After multiple drafts, and input from Abbasi, Ringdahl completed the construction documents. Ringdahl maintains that these plans are its copyrighted works and were marked as such. Abbasi approved Phase I of the project in October 2012, including an estimated total cost of $1,224,794 for *both* phases. (Alton Decl. ¶ XIV, Ex. 13.) Abbasi was invoiced for, and paid, the full amount for Phase I.

In June 2013, the design process for Phase II began and Ringdahl solicited bids from contractors. Ringdahl and Richard Hardine of Infinity Development[2] proposed a budget of over $2,000,000 for Phase II. Abbasi rejected this bid, as well as additional subsequent bids. Eventually, Abbasi asked Swendsrud to bid on the Project, after which Abbasi and Swendsrud agreed to a total of $1,072,000 to construct Phase II. (Alton Decl. ¶ II, Ex. 1 (Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment ("Order in Initial Litigation") at Findings of Fact ¶ 52.) According to Defendants, shortly after submitting the bid, Mike Swendsrud, the principal of Swendsrud, received a phone call from the owner of Tradesman Construction, Inc., offering him $30,000 to withdraw his bid.[3] (*Id*. ¶ 53.) After learning of the call, Abbasi terminated his relationship with Plaintiff. (Alton Decl. ¶ XIX, Ex. 18.) In his e-mail documenting the termination,

---

[2]   Also on August 7, 2012, Abbasi entered into a separate agreement with Richard Hardine to provide pre-construction and construction management services related to the Project. (Alton Decl. ¶ V, Ex. 4.)

[3]   Tradesman bid in the first round of bidding for Phase II.

Abbasi offered to pay Ringdahl $20,000 for the rights to the plans and to separate on "friendly terms" without having to involve lawyers. (*Id.*) The offer was not accepted. In September 2013, Swendsrud began work on Phase II and hired Hilltop as a subcontractor, and both used the Plans to complete Phase II.

After Abbasi terminated Ringdahl, Ringdahl demanded roughly $96,000 from Abbasi. Abbasi refused the demand. Ringdahl sued Abbasi in Minnesota State Court for Breach of Contract, Account Stated, Mechanic's Lien Foreclosure, and Unjust Enrichment (the "Initial Litigation"). In the Initial Litigation, Ringdahl alleged, among other things, that after terminating the relationship with Ringdahl, Abbasi "proceeded with construction of the new home upon the Real Estate and utilized architectural plans prepared by [Ringdahl] in obtaining the building permit for construction of such home." (Alton Decl. ¶ XXIII, Ex. 22 at ¶ XIII.)

On May 19, 2014, Plaintiff registered its final copy of the Plans for the home with the United States Copyright Office. (*Id.* ¶ XXIV, Ex. 23.) On July 14, 2014, counsel for Plaintiff sent Swendsrud a cease and desist letter. (*Id.* ¶ XXV, Ex. 24.) Plaintiff did not add Swendsrud or Hilltop to the Initial Litigation or assert a copyright infringement claim.

In July 2015, the state court held a bench trial in the Initial Litigation, after which the court found in Abbasi's favor. (Order in Initial Litigation at Findings of Fact ¶ 9 & Conclusions of Law ¶ 2.) Specifically, the state court made the following findings and conclusions:

- the Ringdahl-Abbasi Contract does not define "Scope of Services," contains incomplete sentences, does not define material terms and is ambiguous;
- the terms of the Ringdahl-Abbasi Contract are construed against Ringdahl as the drafter;
- Ringdahl breached the Ringdahl-Abbasi Contract by failing to administer construction or complete Phase I;
- Ringdahl did not complete any "Construction Administration Services" related to the design, construction documents, or bidding related to Phase II.

(*Id.* at Findings of Fact ¶ 9 & Conclusions of Law ¶¶ 2-7.) In an attached Memorandum, the judge in the Initial Litigation rejected Ringdahl's assertion that Abbasi was obligated to pay Ringdahl for Phase II under the contract, explaining that Ringdahl breached the Contract, and that its breach precludes Ringdahl's claim for any subsequent breach by Abbasi.

On April 22, 2016, Plaintiff filed this action, asserting claims for copyright infringement, unfair competition under the Lanham Act, violations of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325 D.44, *et seq.*, ("MUDTPA"), and conversion. In an agreement dated July 28, 2016, Abbasi agreed to fully defend and indemnify Defendants against the claims in the lawsuit.

The parties filed cross-motions for summary judgment, the merits of which the Court considers below.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.  *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

## II.   Copyright Infringement Claims Against Swendsrud and Hilltop

Plaintiff alleges that both Swendsrud and Hilltop infringed its copyright by using the Plans to design and construct Phase II of the Project.  In particular, Plaintiff argues that:  (1) Swendsrud directly infringed Ringdahl's copyright by using the Plans and by filing copies of the Plans to obtain permits; (2) Swendsrud is liable for vicarious and contributory infringement because it used derivative infringing plans produced by Hilltop; (3) Hilltop directly infringed Ringdahl's copyright by making modifications to the Plans, labeling the modified drawings as its own, and allowing the modified plans to

be used to complete Phase II; and (4) Hilltop is liable for vicarious and contributory infringement because it received the Plans from Swendsrud, turned the Plans over to subcontractors and suppliers, and directed the Plans to be modified. Defendants argue that they are entitled to summary judgment on all of Plaintiff's copyright claims because, as a matter of law, Abbasi had both an express and implied license, as well as a statutory right, to use the Plans to finish his home, and that the license extended to the use of the Plans by Defendants. Plaintiff opposes Defendants' motion on this claim and argues that Plaintiff is entitled to summary judgment.

Architectural plans and drawings are protected by copyright law. 17 U.S.C. § 102(a). To prove copyright infringement, a plaintiff must demonstrate that it owns a valid copyright and that the defendant engaged in unauthorized copying of the work protected by the copyright. *Feist Publ'ns. v. Rural Tel. Serv. Co.*, Inc., 499 U.S. 340, 361 (1991). Even where direct infringement cannot be proven, a defendant can be held liable for the infringing activities of another. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432-36 (1984).

"Ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law . . . ." 17 U.S.C. § 201(d)(1). The owner of a copyright can transfer ownership interests to another in a signed writing. *Id*. § 204(a). *See also Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). The writing need not contain any particular words to satisfy § 204(a)—the inquiry centers on giving effect to the intent of the parties, which must demonstrate a transfer of the copyright. *See*

7

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 926 (9th Cir. 1999). When the plain language of a contract provides for a transfer, there is no claim for infringement. *Thomsen v. Famous Dave's of Am., Inc.*, 640 F. Supp. 2d 1072, 1079-80 (D. Minn. 2009), *aff'd* 606 F.3d 905 (8th Cir. 2010).

The goal of contract interpretation is to determine and enforce the intent of the parties. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979). Absent ambiguity, contract terms are to be given their plain and ordinary meaning. *Brookfield Trade Ctr., Inc. v. Cty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Contract provisions must be interpreted in the context of the entire contract. *Id.*

In this case, it is undisputed that Plaintiff owns a valid copyright related to the Plans and that Defendants used the Plans to complete Phase II of the Project. The central inquiry on Plaintiff's copyright infringement claim is whether the Court can, as a matter of law, determine that Abbasi had a license or statutory right to use the Plans, thereby providing a defense to any copyright infringement claim.

Here, the Abbasi-Ringdahl Contract provides the following with respect to the Plans:

> **Ownership Documents** All documents produced by the Design Professional under this Agreement shall remain the property of the Design Professional and may not be used by the Client for any other endeavor without the written consent of the Design Professional.

Defendants argue that this language unambiguously provides that Abbasi could use the Plans to complete the construction of his home. This argument requires a finding that the use of the language "any other endeavor" defines the current endeavor as the completion

of the Project with or without the use of Ringdahl's services. While that interpretation is reasonable, looking at the contract as a whole, the Court concludes that this language is susceptible to another reasonable interpretation—that the current endeavor is the completion of the Project using Ringdahl's services. Indeed, Plaintiff argues that Defendants did not have a license to use the Plans because Plaintiff never intended that the Plans would be used to build Phase II of the Project without his continued participation.

The Court concludes that the contract is ambiguous as to whether the parties intended to grant Abbasi an express license to use the Plans to complete the Project without Ringdahl. Both parties' reading of the contract is plausible. Because the contract is ambiguous as to an express license, summary judgment is inappropriate. *See generally, Leisure Time Entm't, Inc. v. Cal Vista*, 79 F.3d 1153 (9th Cir. 1996) (unpublished opinion).

Defendants also argue that Abbasi had an implied license to use the Plans to finish the Project. "A nonexclusive license may be granted orally, or may even be implied from conduct." *Evert Software, Inc. v. Extreme Recoveries, Inc.*, Civ. No. 01-1027, 2001 WL 1640116, at *3 (D. Minn. July 25, 2001) (citing 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §10.03[A], at 10-40 (1997)). *See also Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 831 (8th Cir. 1992) ("unlike an exclusive license, an authorization can be given orally or implied from conduct"). "Proof of the existence of an implied license is an affirmative defense to a copyright

infringement claim." *Evert Software*, 2001 WL 1640116 at *3.  An implied license may arise when: "(1) a person requests the creation of a work; (2) the creator makes the particular work and delivers it to the person who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute the work." *Id.*

For the same reasons discussed above, the Court concludes that the record is not clear as to whether Ringdahl intended for Abbasi to be able to copy and distribute the Plans to complete the Project without using Ringdahl's services.  Therefore, summary judgment is not appropriate on the issue of whether Abbasi had an implied license.

Finally, Defendants argue that they are entitled to a statutory right to use the Plans under 17 U.S.C. § 120, which provides in relevant part:

> **(b) Alterations to and destruction of buildings.**--Notwithstanding the provisions of section 106(2), the owners of a building embodying an architectural work may, without the consent of the author or copyright owner of the architectural work, make or authorize the making of alterations to such building, and destroy or authorize the destruction of such building.

This statute is directed at preventing a copyright owner "from interfering with alterations to habitable architectural works." *Javelin Investments, LLC v. McGinnis*, Civ. No. H-05-3379, 2007 WL 781190, *6 (S.D. Tex. Jan. 23, 2007) (discussing legislative history).  The Court finds that Defendants have not established that this statute applies to their use of the Plans in this case.  Section 120(b) specifically provides that the owners of "a building embodying an architectural work" may make alterations "to such building."  Here, the Project was separated into two distinct phases, the garage (Phase I) and the separate home (Phase II).  Phase II was not built at the time that Ringdahl was

terminated, and it is not clear that the statute applies to a building that has not yet been built. Moreover, § 120(b) distinguishes between a "building embodying an architectural work" and "architectural work"—the latter being, among other things, architectural plans. 17 U.S.C. § 101. Here, because the Plans are an architectural work, and not a "building embodying an architectural work," the Court concludes that § 120(b) simply does not apply.[4]

Because the Court concludes that fact issues exist as to whether Defendants had either an express or implied license to use the Plans, the Court denies the motions for summary judgment on Plaintiff's copyright infringement claim.[5]

## III.    Unfair Competition Under the Lanham Act

Plaintiff also asserts a claim for unfair competition under Section 43 of the Lanham Act. In support, Plaintiff alleges that Defendants' activities "in infringing

---

[4] The Court is aware that Defendants rely on *Javelin Investments* for the proposition that the § 120(b) gives Abbasi (and by extension the Defendants) the right to copy and modify the Plans for the limited purpose of finishing Phase II of the Project. *See Javelin Investments*, 2007 WL 781190, at *8 (explaining that §120(b) places no limits on the means by which the owner of a building may alter that building without fear of copyright infringement). The Court notes, however, that this case is distinguishable from the facts of *Javelin Investments*. In *Javelin Investments*, construction of the building at issue had begun and, therefore, there was an existing building that the homeowners were entitled to complete. Here, construction of Phase II had not begun and, therefore, there was no "building embodying an architectural work" to alter. In addition, the *Javelin Investment* case is an unpublished decision in a different district and is not controlling here.

[5] As to Plaintiff's motion for summary judgment on its copyright infringement claim, the Court concludes that fact issues exist, including but not limited to whether Defendants knowingly and intentionally infringed Plaintiff's copyright to establish vicarious or contributory infringement. In addition, the question of damages, if any, is properly determined at trial.

11

Ringdahl's copyright, including by passing off copyrighted plans prepared by Ringdahl as Hilltop's, are likely to cause confusion, mistake or deception regarding Ringdahl's rights to or in the [P]lans."  (Compl. ¶¶ 52-53.)  As a remedy, Plaintiff seeks lost profits, treble damages, and attorney fees.  (Doc. No. 39 at 26-27.)

The Lanham Act creates a federal tort of unfair competition based on false designation of origin or other false representation used in connection with the sale of a product.  15 U.S.C. § 1125(a).  The key factor in determining if there has been a violation under § 43(a) is whether defendant's products create a likelihood of confusion, deception or mistake on the part of the consuming public.  *See Toro Co. v. R & R Products Co.*, 787 F.2d 1208, 1214 (8th Cir. 1986).  Plaintiff argues that Defendants engaged in "reverse passing off" by creating modified versions of the Plans, marking them as their own, and supplying them to others.

The Court concludes that because fact issues remain with respect to whether Abbasi had a license to use the Plans, Plaintiff's motion for summary judgment on the Lanham Act is properly denied.  If a fact-finder determines that Abbasi had a license to use the Plans to complete the construction of the Project, then that determination could preclude any liability under the Lanham Act, as licensed use is a defense to a claim for false designation of origin.  *See A.Hak Indus. Servs. BV v. TechCorr USA, LLC*, Civ. No. 3:11-74, 2014 WL 7243191, at *9 (N.D. W. Va. Dec. 19, 2014) (collecting cases and explaining that courts have recognized that a license can be a defense to a false designation of origin claim).

In support of their motion, Defendants make the additional argument that any claim for monetary damages under the Lanham Act fails as a matter of law because Plaintiff cannot establish actual confusion. A plaintiff seeking injunctive relief under the Lanham Act need only establish a likelihood of confusion. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir. 1997). A claim for money damages under the Lanham Act, however, requires proof of "both actual damages and a causal link between defendant's violation and those damages." *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1042 (8th Cir. 1999) (citation omitted). This requires a showing "that the defendant's violation caused actual confusion among the consumers of the plaintiff's product and, as a result of this consumer confusion, the plaintiff suffered actual injury, such as a loss of sales, profits, or of present value." *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1489 (D. Minn. 1996). Plaintiff argues that this case involves "reverse passing off" (falsely attributing the Plans to itself or a third party) and that in such cases, consumer confusion is presumed. *See, e.g.*, *Johnson v. Jones*, 149 F.3d 494, 503-04 (6th Cir. 1998) (finding liability for false designation of origin and awarding attorney fees in a "reverse passing off" case). Plaintiff also argues that it need not demonstrate actual confusion because this case is "exceptional" and involved willful infringement. *See Masters v. UHS of Delaware, Inc.*, 631 F.3d 464, 474 (8th Cir. 2011) (explaining that a finding of willful infringement may justify an accounting of profits).

While the Court acknowledges that the record appears to have scant, if any, evidence of actual consumer confusion and that a lack of such evidence could impact any

claim for damages under the Lanham Act, the Court declines to decide this issue on summary judgment, particularly in light of the allegations that Defendants attributed Plaintiff's Plans to themselves. The Court concludes that the issue of whether damages are ultimately available based on evidence of confusion or "reverse passing off" is more appropriately addressed at trial or in a pre-trial motion in limine.

### IV.     Unfair Competition Under the MUDTPA

Plaintiff also asserts claims for unfair competition under the MUDTPA, alleging that "Defendants' unauthorized use of Ringdahl's copyrighted plans is likely to cause confusion, mistake or deception to the consuming public as to Ringdahl's affiliation, sponsorship or approval of Defendant's [sic] commercial activities." (Compl. ¶ 57.)

Under the MUDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Minn. Stat. § 325D.45. "Proof of monetary damage, loss of profits, or intent to deceive is not required." *Id.* Because MUDTPA provides for only injunctive relief, the plaintiff must show the risk of future harm. *See, e.g.*, *Hudock v. LG Elecs. U.S.A., Inc.*, Civ. No. 16-1220, 2017 WL 1157098, at *6 (D. Minn. Mar. 27, 2017); *Klinge v. Gem Shopping Network, Inc.*, Civ. No. 12-2392, 2014 WL 7409580, at *2 (D. Minn. Dec. 31, 2014); *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 14-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (collecting cases). Here, Plaintiff has not pointed to any facts suggesting that Defendants are likely to use the Plans again or that Plaintiffs are likely to suffer any

future harm that can be remedied through injunctive relief. Thus, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's MUDTPA claim. *See Klinge*, 2014 WL 7409580 at *2 (granting summary judgment on the MUDTPA claim because the plaintiff did not assert an ongoing relationship or intent to purchase gems from the defendants in the future).

## V. Conversion

Plaintiff argues that Defendants converted Plaintiff's copyrighted plans by copying the Plans, supplying the Plans to others, making derivative versions of the Plans, and by helping build Abbasi's residence using the Plans. Plaintiff argues that it is entitled to actual damages in the form of an unpaid fee for producing the Plans to be used to build Abbasi's home. Under Minnesota law, a claim for conversion "occurs where one willfully interferes with the personal property of another *without lawful justification*, depriving the lawful possessor of use and possession." *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003) (emphasis added) (internal quotations omitted). Here, because fact issues remain regarding whether Abbasi and Defendants had a license to use the Plans, fact issues also exist as to whether Defendants used the Plans without legal justification so as to support a claim of conversion. Therefore, the Court denies summary judgment on Plaintiff's conversion claim.

## VI. Res Judicata

Finally, Defendants argue that all of Plaintiff's claims are barred by res judicata based on the Initial Litigation. Again, in July 2015, the Initial Litigation was tried in

state court on Plaintiff's claims of breach of contract, account stated, and mechanic's lien foreclosure against Abbasi.

The doctrine of res judicata bars a claim when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004). Here, there is no dispute that a court of competent jurisdiction rendered a prior judgment in the Initial Litigation. In addition, the Court concludes that the claims brought in the Initial Litigation and the present lawsuit all arise out of the same set of factual circumstances—namely those related to the construction of Abbasi's home by Swendsrud and Hilltop, and the extent to which Plaintiff was entitled to compensation under the Ringdahl-Abbasi Contract for Defendants' completion of the Project. In particular, in the Initial Litigation, Ringdahl sued Abbasi after Abbasi proceeded with the construction of Phase II of the Project using the Plans prepared by Plaintiff and Swendsrud and Hilltop to complete the Project. Here, while the claims are asserted against different defendants, the same set of operative facts applies and the allegations in the Initial Litigation involved the actions of both Swendsrud and Hilltop.

The Court therefore turns to the questions of whether the parties were the same in the Initial Litigation and as in this action. Plaintiff in both cases is Ringdahl. The named defendants, however, are different. Even so, res judicata may be invoked against Ringdahl if Swendsrud and Hilltop are in privity with Abbasi. *See Global Maintech*

*Corp. v. AIG Techs., Inc.*, Civ. No. 04-4638, 2006 WL 354224, at *3 (D. Minn. Feb. 15, 2006). The Minnesota Supreme Court has explained that:

> Privity expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties . . . . [c]ourts will find privity to exist for those who control an action although not parties to it, those whose interests are represented by a party to the action, and successors in interest to those having derivative claims. However, privity may also be found in other circumstances . . . when a person is otherwise so identified in interest with another that he represents the same legal right.

*Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (citations omitted) (internal quotations omitted).

Defendants argue that privity exists by virtue of the indemnity agreement between Defendants and Abbasi and because the relationship between Abbasi and Defendants is akin to a principal-agent relationship. In particular, Defendants assert that Swendsrud agreed to act on Abbasi's behalf, and subject to his control, in the building of the Project. In addition, Defendants assert that Hilltop agreed to move forward with the Project after receiving assurances that Abbasi believed that he had the right to use the Plans and after Abbasi promised to indemnify Hilltop.

The dispositive question on privity is whether Swendsrud and Hilltop are so identified in interest with Abbasi that they represent the same legal right. In *Rucker*, the plaintiff successfully sued her ex-husband for intentionally misrepresenting the value of his business during divorce proceedings. *Id*. at 115. The plaintiff then sued her ex-husband's attorney and his law firm based on the same misconduct. *Id*. The attorney

17

and the law firm moved to dismiss on the grounds that the claims were barred by the doctrine of res judicata. *Id*. The Supreme Court concluded that res judicata did not apply because the attorney-client privilege did not create privity. *Id*. at 120.

In reaching this conclusion, the Minnesota Supreme Court examined whether the client and his attorney had an identity of interest in the outcome of the first litigation such that the client represented the attorney's and law firm's legal interests. *Id*. at 118. The court noted that such an interest must be more than a common objective of a favorable outcome. *Id*. at 119. Instead, they must be "similarly affected by the outcome of a legal proceeding." *Id*. at 120. The Court noted that the attorney and his firm did not have a "controlling participation" or "active self-interest" in the first fraud action, were not successors in interest to a derivative claim of a party in the first fraud action, and that there was no claim that any party represented the interests of the attorney and his firm in the first action. *Id.* at 118.

Here, the Court cannot conclude on the current record that Defendants are in privity with Abbasi. It is not evident that Defendants had any active self-interest or controlling participation in the Initial Litigation, which was primarily a contract dispute between Plaintiff and Abbasi and did not involve claims for copyright infringement. Nor is it evident that Defendants' interests were represented by Abbasi in the Initial Action or that those interests were "so identified" with Abbasi's that they represented the same legal right because Defendants would have been unaffected by the outcome of the Initial Action. Moreover, while Abbasi agreed to indemnify Defendants in the present action,

18

CASE 0:16-cv-01060-DWF-LIB   Doc. 61   Filed 11/06/17   Page 19 of 19

this agreement was not entered into until July 2016, which was roughly one year after the conclusion of the Initial Litigation and three months after commencement of the present action.  Thus, this agreement (and Abbasi's alleged power to control this lawsuit) does not speak to whether Abbasi was acting with accountability to Defendants in the Initial Litigation.

Because Defendants have failed to establish that they are in privity with Abbasi, the Court concludes that Defendants are not entitled to the application of res judicata.

## CONCLUSION

While this case survives both parties' motions for summary judgment, the Court cautions the parties not to equate a victory at this stage of the litigation as a guarantee that they will prevail at trial.  The Court believes that settlement would serve the interests of all parties.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. [30]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Plaintiff's MUDTPA claim (Count V) is **DISMISSED**.

2. Plaintiff's Motion for Summary Judgment (Doc. No. [36]) is **DENIED**.

Dated:  November 6, 2017                s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge

19